OPINION OF THE COURT
Joseph J. Sedita, J.
We live in a complex society in which multiple levels and groupings of governmental units attempt to work together, hopefully for the good of our various communities. One of the inherent problems in these interrelationships is the fact that the fiscal years of the various units of government do not always coincide. This fact helps to make governmental planning and the budgetary process more a matter of prognostication than scientific exactitude. To further complicate matters, one must consider the myriad of Federal and State rules and regulations imposed on municipalities and often laden with their own timing requirements. These regulations hover menacingly over local officials with the constant threat of the loss of State or Federal aid, upon which many of our local governments have come to depend. Through this bureaucratic and legal morass came slogging *669 the Mayor and City Council of Lackawanna, attempting to improve the city’s sewer and sanitation system in compliance with Federal mandates. It is, perhaps, no surprise that their steps may have been unsteady and perhaps imperfectly timed. This suit asks this court to review those steps and determine if they were insufficiently in tune with the supervening cadence of the law.
This proceeding challenges the adoption and implementation of a local law establishing a “sewer rent fund” and a system of sewer rents in the City of Lackawanna. Petitioners challenge various fiscal procedures effectuated by the respondents prior to and subsequent to the adoption of this local law.
The City of Lackawanna is the beneficiary of over $18 million in Federal and State aid for the improvement and maintenance of sewage treatment and water quality by the city. Receipt of these substantial funds was contingent upon compliance with various Federal regulations including the establishment of a system of sewer rents when the project reached a point at which it was 50% completed.
The Mayor and the city council, apparently aware that the project was nearing the 50% completion point, anticipated the establishment of sewer rents and estimated their amount when the 1981 city budget was adopted. When the project approached the 50% completion point a few months later, the Mayor and city council “adopted” a local law establishing a sewer rent system including a sewer rent fund and appropriate usage rates. The actual- adoption of the local law was apparently delayed additionally so that the proper rate could be determined and established at the time of the adoption of the local law. During the time prior to the adoption of the local law, moneys were advanced from the “general” fund to pay the operating expenses of the sewer district. Following the adoption of the local law, the city sought to reimburse the “general” fund out of the new “sewer rent” fund for moneys which were advanced to cover operating expenses in the interim period. Petitioners attack these fund transfers as improper as well as challenging the procedures followed in the adoption of the local law.
*670 The first issue to which this court must address itself is the question of whether or not the Mayor and council complied with proper procedures for the adoption of a valid local law. These procedures are primarily set forth in sections 20 and 21 of the Municipal Home Rule Law. In municipalities having an elective chief executive (as in our case) the procedures include adoption by a majority of the legislative body and approval by the elective executive after a public hearing has been held. In this case each of the substantive elements of this procedure was accomplished by the Mayor and council. The crux of the challenge here, however, is that the' public hearing was held prior to rather than after action by the council. Petitioners assert that the adoption procedure must be followed in exactly the manner in which it appears in the text of the Municipal Home Rule Law. We disagree.
Nowhere in the statute is an express requirement that the elements of adoption follow the exact order of their appearance. The statute does not even set forth each step as a separate item. The statute amalgamates the required elements for adoption within subdivisions 4 and 5 of section 20 and in section 21 of the Municipal Home Rule Law. The obvious intent of the Legislature was to insure an opportunity for public input via a public hearing prior to any final approval of a local law. In the present case public policy and the obvious intent of the Legislature were given even fuller expression than if the requirements were followed exactly as they appear in the statute. In the case before us, the public certainly had an opportunity for input prior to final approval and that input (public hearing) was held even before the council voted on the proposed local law. The citizens were given an opportunity to express themselves before action was taken by any of their elected representatives.
Section 51 of the Municipal Home Rule Law admonishes the court that “This chapter shall be liberally construed.” The procedures for adoption of local laws are, of course, also part of the Municipal Home Rule Law to which liberal construction is mandated. Additionally, we note that the statutory rules for the construction and interpretation of statutes do not require strict compliance unless the essence *671 or substance of the legislative intent has been vitiated. (See McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 171-174.) The adoption procedures were substantially complied with and the court can find no prejudice having inured to the public from any alleged deviation from the procedural time requirements. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 172; Matter of 121-129 Broadway Realty v New York State Div. of Human Rights, 43 AD2d 754.) The same analysis would apply to the alleged imperfection in the notice of the public hearing. Once again, the defect was nonsubstantial in nature. (See Morin v Foster, 93 Misc 2d 10.) And finally, we do not feel that the establishment of sewer rents is subject to a permissive referendum pursuant to section 24 of the Municipal Home Rule Law. Even if this matter were subject to a permissive referendum, the time within which to file the requisite petition for a referendum had long expired before this present action was even commenced. For all of the above reasons, it is the considered opinion of this court that the requirements of the law for the adoption of this local law were sufficiently and substantially complied with by the city officials. This court is compelled to uphold this local law.
Having ruled that this local law was properly enacted, we must now deal with the question of fund transfers and budget provisions which have been questioned by the petitioners herein.
As we noted in the introduction to this opinion, fiscal years of the various levels of government do not always coincide, and the timing of various Federal or State requirements do not always mesh in a neat and simple way. Modern budgets attempt to predict and guide the flow of fiscal resources with no pretensions or guarantees of perfection. Most modern budgets recognize their inherent imperfection by building into their structure a measure of flexibility.
In the case before us, the city officials had to prepare a budget before it was appropriate or practical to adopt a local law to establish sewer rents, although the city officials foresaw the adoption of such a law and the establishment of such a system within the very near future. Aware *672 of their intent to adopt such a law and the necessity of such a law to insure Federal funding of their sewage treatment program, they acted in a very practical manner under the circumstances. They adopted a budget which anticipated the receipt of sewer rents. There has been no allegation that the procedure followed in the adoption of this budget was anything less than proper. This budget was duly adopted by the elected officials of the city and reflected their calculated prediction of the fiscal needs and estimated revenues of this municipality. We can find no impropriety in the document per se, as it reflects their best reflection of the city’s anticipated fiscal flow in the year ahead.
The allegation of impropriety in the case of certain funds arises from the fact that general fund moneys were utilized to cover the operating expenses of the sewer district during the period of the fiscal year prior to the enactment of the local sewer rent law. The respondents have pointed out that this was merely a temporary fund transfer from the general fund to be repaid upon the passage of the local law and the establishment of the sewer rent fund provided for and anticipated in the budget. In previous years the costs of the sewer district had been paid out of the general fund. In this year’s budget, the council and the Mayor had anticipated and apparently included an allocation for sewer district operating costs but the funding was to come from the sewer rent fund. While expenditure of these funds during this “catch 22” fiscal period between the beginning of the fiscal year and the adoption of the local law may have been technically improper, we can see no real damage or loss to the city taxpayers if the general fund has been fully reimbursed for the moneys which were advanced during this interim period.
This leads us to the question of whether or not it was proper for the “sewer rent fund” to reimburse the “general” fund for sewer district operating expenditures paid prior to the enactment of the local law. We think it was proper under the circumstances of this case.
Section 453 of the General Municipal Law specifically authorizes the use of sewer rent fund moneys for the payment of the costs of operation and maintenance. The *673 reimbursement was clearly for operating and maintenance costs expended during the “catch 22” transition period. The people of the City of Lackawanna are in no way being “cheated” by this reimbursement. There is no allegation that these costs were not anticipated in the budget, only that they were paid out of the wrong “fund”. The taxpayers have received 12 months of sewer service from the city and they have been required to only pay for the cost of operation and maintenance expenses for 12 months. The mechanism for payment of day-to-day operating costs changed during the course of the fiscal year, but it does not appear that any injustice or inequity has been visited upon the people of the City of Lackawanna by this change. On the contrary, the citizens are the recipients of millions of dollars in Federal aid in return for compliance with certain regulations (including establishing a system of sewer rents) and paying a relatively small proportion of the costs of the new system. The city fathers cannot be said to have acted unreasonably under the complex set of circumstances within which they were required to act.
Accordingly, it is the considered opinion of this court that this petition should be denied.